BENJAMIN F. HAINES AND OTHERS,
vs.                                              December Term, 1853.
MORDECAI HAINES AND OTHERS.

[PARTITION OF REAL ESTATE—SPECIFIC PERFORMANCE.]

In a proceeding for the partition of the real estate of an intestate, two of his children, to whom he had in his lifetime given certain portions of his estate, and of which they had taken possession, and made expensive improvements thereon, under the promise or agreement of their father that the property should be theirs, were made *defendants*, and they insisted that the land so claimed and possessed by them was not liable to partition. HELD—

That under the case as presented, the parties claiming the lands being *defendants*, and not asking the active interposition of the court in their favor, partition of these lands should not be decreed.

A much weaker case will constitute a good defence than would be required if the parties were complainants, asking the active interposition of the court in their favor ; they are not bound to make out a case which would entitle them to the specific performance of the agreement set up in their answers.

To constitute a valuable consideration, it is not necessary that money should be paid ; if it be expended on the property on the faith of the contract, it constitutes a valuable consideration.

Money expended in the improvement of land on the faith of the contract constitutes a consideration on which to ground a claim for specific performance.

A court of equity will not decree the specific performance of a mere voluntary agreement.

[The facts of this case are sufficiently stated in the following opinion of the Chancellor, which was delivered on the 22d of February, 1854.]

THE CHANCELLOR :

This is a bill filed by the complainants in February, 1849, for a partition of the real estate whereof Nathan Haines died seized in the year 1848.

Although the deceased executed a will, as stated in some of the answers, it was not attested so as to pass real estate, and as to that, therefore, he died intestate, and the question presented by the proceedings, and to which the argument made

11*

before me has been exclusively directed, has reference to the validity of alleged dispositions of his land made by him in his lifetime.

Nicholas Hardy, and Eleanor his wife, one of the daughters and heirs at law of Haines, allege in their answer, that about the year 1843 he gave to them, jointly, in fee simple, about one hundred and seventy acres of land, and put them in possession thereof, upon which they have expended large sums in improvements of various kinds, having built a dwelling house and other houses, and rendered the soil more productive by lime. That they have exercised every act of ownership over the land, with the knowledge and approbation of said Haines, who encouraged them in making expenditures thereon, and constantly and always admitted the title thereto to be in them.

They also set up an agreement in writing, signed and sealed, dated the — day of July, 1845, by which Haines bound himself to convey the land claimed to them. This agreement is as follows :—"Received of Nicholas Hardy five dollars to me in hand paid for a part of the land conveyed to me by Walter Worthington, and now laid off by John Brown, containing one hundred and seventy acres, more or less, and which I promise and oblige myself, my heirs or assigns, to convey to the said Nicholas Hardy, and Ellen his wife, the said land to them, their heirs or assigns, in fee, and of which I have given them, the said Nicholas Hardy, and Ellen his wife, possession of the same. In testimony whereof I have hereunto subscribed my hand and seal this the — day of July, 1845."

Signed,                    "NATHAN HAINES. { SEAL. } "

And the said Hardy and wife admit that said land was given and transferred to them as their entire interest in the whole real estate, of which said Nathan Haines died seized and possessed.

The defendant, Mordecai Haines, in like manner, in his answer, says that his said deceased father, Nathan Haines, in the year 1840, gave him the farm on which he now resides, containing about one hundred and forty-one acres, and placed him in possession thereof, upon which he has been residing ever

since, and upon which he has expended large sums of money in improvements, with the knowledge and under the advice of his father, and his assurance that the title was in him by virtue of the gift and possession as aforesaid. And this defendant, assuming his title to said land to be good, disclaims all interest in the residue of the real estate of his father.

Pressed for time, and seeing no advantage in dwelling at length upon either the facts or the law of this case, I shall proceed very briefly to state the grounds upon which I have formed the opinion that the defendants, Hardy and wife, and Mordecai Haines, as the cause is presented, have succeeded in showing that a partition or sale of the land claimed by them should not be decreed.

They are defendants here, and it cannot be necessary to refer to authorities to show that a much weaker case will constitute a good defence than would be required if they were complainants, asking the active interposition of the court in their favor. A stronger illustration of this principle could not easily be found, than in the case of *Crane* vs. *Gough,* recently decided by the Court of Appeals, upon an appeal from this court, and reported in 4th *Md. Rep.,* 316. It is a familiar and acknowledged principle, as shown in 3 *Md. Ch. Decisions,* 133, and the authorities there cited.

These defendants, therefore, as I conceive, are not bound to make out a case which would entitle them to ask for the specific performance of the engagement set up in their answers. They do not ask this court to decree them a conveyance, or to do anything for them. All they require is, that the land which they claim may not be partitioned or sold. In other words, they ask to be let alone, and this request, under the circumstances of the case, I think, should be accorded to them.

There can be no doubt, I think, that these defendants, Hardy and wife, and Mordecai Haines, took possession of these parcels of land, with a clear and distinct understanding, founded on the positive promise of Nathan Haines, that they were to have them in absolute title, and that they, and particularly Hardy, made large and expensive improvements upon them, with the knowledge and consent of the father, and upon the faith of his engagement to give them the lands.

It is certainly true, that a court of equity will not decree the specific performance of a mere voluntary agreement, and if these parties were simply volunteers, and were here asking to have the agreement specifically performed, they could not be gratified. But they are not here asking the aid of the court in their favor. They have been brought here as defendants, and merely ask the court to leave them in possession of the property which they have held for many years, which they have improved at considerable expense, and which they had abundant reason to think had been given to them.

The difference between *King's heirs* vs. *Thompson and wife*, 9 *Peters*, 204, in the attitude in which the parties appear before the court, is in favor of these defendants. There the parties claiming under the proposed grant of George King, were complainants, seeking the enforcement of the contract in which they would have been successful if the terms could have been established with sufficient certainty. The circumstances of that case and this are very much the same, and yet the Supreme Court said that it could not be considered voluntary. There was not only a good consideration, that of natural love and affection, but a valuable one. To constitute a valuable consideration, it is not necessary that money should be paid, but if, as in this case, it be expended on the property on the faith of the contract, it constitutes a valuable consideration.

The same principle was established by the case of *Shepherd* vs. *Bevin et al*, 9 *Gill*, 32, where, after speaking of the inclination of the courts to deal favorably with agreements made by a parent with a child, and declaring the agreements of that kind will be supported by a slight consideration, it was held that money expended in improvement of land on the faith of the contract constitutes a consideration on which to ground a claim for specific performance.

Upon the authority of these two cases, and especially of the latter, to which this court is bound to defer, there can be no doubt, I think, that if these parties, Hardy and wife, and Mordecai Haines, were here as complainants, asking for the specific execution of the agreement of Nathan Haines with them, and

they could show its precise terms, this court could not reject their application. But they are not here as complainants, and all they ask is, that the court will not interfere actively against them, and take from them property of which they have been long in possession, and upon which they have made expensive improvements, upon the faith of a promise or agreement that the property should be theirs.

No one, of course, can dispute the right of Nathan Haines to dispose of his property among his children according to his own pleasure, unless, indeed, such disposition should be in conflict with the claims of creditors, and their rights cannot be affected by this proceeding in any way. The case in *Peters*, before referred to, shows that money expended under a belief that the property belonged to the party making the expenditure, should be regarded as constituting an equitable lien, and though the contract, for the want of precision in its terms, could not be specifically enforced, the property was ordered to be sold, and the proceeds applied in the first place to the payment of the sums expended, and the balance, if any, paid over for the benefit of the creditors of the father of the female complainant, and in further proof of the favor with which the complaints were considered by the Supreme Court, they were not held responsible for the rent, either during their own occupancy, or whilst it was held by tenants.

But it is not now the purpose of the court to intimate any opinion with respect to the rights of the creditors of Nathan Haines, if his personal estate should be insufficient to pay his debts, as is stated in the answer of Hardy and wife, and Mordecai Haines. The creditors are not here, and, of course, are not to be prejudiced by the reasoning or judgment of the court in this case.

The question, and the only question now to be determined is, whether, in a proceeding for the partition of the real estate of Nathan Haines, among his heirs at law, the parcels of land which Hardy and wife, and Mordecai Haines, are and have been in the possession of, claiming the same as their own, and upon which they have expended large sums of money, under

the honest conviction that their title was good, shall be subject to such partition.  There certainly would be no equity in so doing, especially as the property which remains to be divided between his two other children and their representatives, is nearly equal in value to the parcels held and claimed by Hardy and wife, and Mordecai Haines, due allowance being made for the moneys expended by them in improvements.

It does not clearly appear, from the return of the commissioners, whether the lots, Nos. 1 and 2, comprehend the lands of which these parties have been in possession.  They state them to be the lands claimed by Mordecai Haines and Nicholas Hardy, and Eleanor his wife, and it is presumed they are the same parcels of which they have respectively been in possession, and upon which they have expended their money in improvements.  If this be so, my opinion is, that they are not subject to partition among the heirs at law of Nathan Haines, and that the lot, No. 3, remains only to be divided between the two other heirs, or their representatives.

The commissioners state in their return that the land cannot be divided among the parties without serious loss to them all, and that it cannot be divided into more than four lots without materially reducing its value, and they give their reasons for this opinion.  But they have only divided it into three parts, and it does not appear whether the third lot; which, (assuming lots Nos. 1 and 2 to have been held as aforesaid,) in my opinion, is the only part subject to partition, is capable of being divided into two parcels.  That is, between the remaining two heirs of the deceased, excluding Mordecai Haines and Hardy and wife. It will, therefore, be necessary to remand the commission with directions to make partition of the real estate whereof the said Nathan Haines died seized into two parts, according to the views herein expressed.

ROBERT J. BRENT, for Complainants.

WILLIAM H. G. DORSEY, for Defendant.